IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODOLFO B., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Respondent. | No. 19 CV 6054 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Claimant Rodolfo B.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Commissioner of the Social Security Administration ("Commissioner"), partially denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Claimant filed a "Brief in Support of Plaintiff's Motion for Summary Judgment" [ECF No. 15] asking this Court to remand the case for further proceedings, or alternatively,

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilojo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

retroactively award Claimant DIB as of December 7, 2015. Commissioner then filed her own brief, [ECF No. 26], which this Court has construed as a cross-motion for summary judgment. For the reasons discussed in this Memorandum Opinion and Order, the Court denies Claimant's Motion [ECF No. 15] and grants the Motion of the Commissioner [ECF No. 26].

## PROCEDURAL HISTORY

Claimant filed an application for DIB on December 28, 2015, alleging a disability onset date of December 7, 2015. (R. 14, 189). The Social Security Administration denied Claimant's application on June 30, 2016 and upon reconsideration on December 22, 2016. (R. 92–104, 106–21). On January 25, 2017, Claimant submitted a written request for a hearing before an Administrative Law Judge ("ALJ"). (R. 151). Claimant appeared and testified at the hearing held on May 29, 2018 before ALJ Joel Fina. (R. 41—45, 59–75). During that hearing, attorney Harold Conick represented Claimant, and ALJ Fina also heard testimony from impartial medical expert ("ME") Subramaniam Krishnamurthi and impartial vocational expert ("VE") Leida Woodham. (R. 45–59, 75, 87–91). On August 22, 2018, ALJ Fina partially granted Claimant's claim for DIB. (R. 10, 14–30).

In finding Claimant was disabled within the meaning of the Act as of September 8, 2017, but not as of December 7, 2015, the ALJ followed the five-step evaluation process Social Security Regulations ("SSR")[3] require for individuals over

---

[3] SSR "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 CFR § 402.35(b)(1). Although the Court is

2

the age of eighteen. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since December 7, 2015, Claimant's alleged disability onset date. (R. 17). At step two, the ALJ found that as of December 7, 2015, Claimant had severe impairments, as defined by 20 C.F.R. 404.1520(c), including chronic obstructive pulmonary disease (COPD), coronary artery disease post coronary arthroplasty, obesity, mild degenerative disc disease, and a history of alcohol abuse in reported sustained remission. The ALJ also found that Claimant had additional severe impairments, as defined by 20 C.F.R. 404.1520(c), as of September 8, 2017, including trigger finger of the right index finger, middle finger, and thumb, and carpal tunnel of the right wrist. (R. 17). The ALJ acknowledged Claimant had other impairments—hyperlipidemia, hypertension, and depression—and concluded these impairments were non-severe since they did not "significantly limit the [Claimant's] ability to perform basic work activities." (R. 17).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). Specifically, the ALJ considered listings 1.02 and 1.04 for Claimant's musculoskeletal impairments, 3.02 for his respiratory impairments, 4.04 for his cardiovascular impairments, and 11.14 for Claimant's carpal tunnel and concluded the record did not demonstrate the requisite "level[s] of limitation" to meet or medically equal any

---

"not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

3

of those listings until a doctor prescribed Claimant oxygen upon hospital discharge in December 2017, at which point Claimant's "impairment would equal Listing 3.02 from that time forward." (R. 19).

The ALJ then found that Claimant, prior to September 8, 2017, had the residual functional capacity ("RFC")[4] to:

> perform light work as defined in 20 CFR 404.1567(b). He could lift and carry up to 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk for approximately two hours per 8-hour workday and sit for approximately six hours per 8-hour workday with normal breaks. He could never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs. He could occasionally balance, stoop, crouch, kneel, and crawl. He needed to avoid concentrated exposure to extreme cold and heat and concentrated exposure to respiratory irritants such as fumes, odors, dusts, and gases. He needed to avoid all exposure to unprotected heights. (R. 20).

The ALJ found that as of September 8, 2017, Claimant has the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a). He can lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for approximately two hours per 8-hour workday and sit for approximately six hours per 8-hour workday with normal breaks. He can never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs. He can occasionally balance, crouch, kneel, and crawl. He must avoid concentrated exposure to extreme cold and heat and concentrated exposure to respiratory irritants such as fumes, odors, dusts, and gases. He must avoid all exposure to unprotected heights. Beginning on September 8, 2017, Claimant has been further limited to occasional bilateral fingering, defined as fine manipulation of items. (R. 26).

Based on the RFC determinations, the ALJ found at step four that, prior to September 8, 2017, Claimant could perform past relevant work as an auto sales manager, which the VE assessed was skilled and sedentary in exertional demand as

---

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-676 (7th Cir. 2008).

4

it is performed in the national economy but "very heavy" in exertional demand as the Claimant performed it. (R. 28). The ALJ also found that beginning September 8, 2017, the requirements of Claimant's past relevant work as an auto sales manager exceeded Claimant's RFC because the duties of someone with that occupational title include "frequent fingering. (R. 27–28). Due to Claimant's carpal tunnel and trigger finger, Claimant is limited to only "occasional fingering." (R. 27–28). So, at step five, the ALJ found that, considering Claimant's age, education, past work experience, and RFC, as of September 8, 2017, "there are no jobs that exist in significant numbers in the national economy that the [C]laimant can perform." (R. 29).

The ALJ concluded that Claimant "was not disabled prior to September 8, 2017, (20 CFR 404.1520(f)) but became disabled on that date" and continued to be disabled through the date of the ALJ's decision on August 22, 2018. (R. 29–30). Thus, the ALJ found Claimant was not disabled from December 7, 2015, Claimant's alleged disability onset date, through September 7, 2017. The Appeals Council declined to review the matter on July 18, 2019, (R. 1–3), making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g.*, *Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Hayes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ supported his or her

5

decision with substantial evidence in the record and whether the ALJ applied the correct legal standards to reach his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also* 42 U.S.C § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency [in the Social Security judicial review context] is not high." *Biestek*, 139 S. Ct. at 1154. Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not, "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts of evidence, or by making independent credibility determinations." *Elder v.*

6

*Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, in making a substantial evidence determination, the Court must review the record as a whole, but it cannot re-weigh the evidence or substitute its judgment for that of the ALJ. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## ANALYSIS

On appeal, Claimant asserts only one challenge to the ALJ's decision: that the ALJ failed to consider, both in his listing level analysis and in his RFC determination, the severity of Claimant's combination of impairments for the period between December 7, 2015—Claimant's alleged disability onset date—and September 7, 2017. Claimant's Brief [ECF No. 15] at 3. In response, the Commissioner contends that Claimant's "argument is merely a demand that this court reweigh the evidence before the ALJ, in contravention of clear precedent." Commissioner's Resp. [ECF No. 26] at 1. As explained below, the Court agrees with the Commissioner that remand is not required in this case because the ALJ adequately weighed Claimant's impairments both individually and in combination. The ALJ cited specific evidence from the record and relied on the testimony of an independent medical expert ("ME") to answer the dispositive question of how the clinical evidence supports the ALJ's RFC assessment, as well as the issue of medical equivalency. Although Claimant may disagree with the outcome, ultimately, the ALJ supported his RFC determination for Claimant with

7

substantial evidence and applied the correct legal standard in making that determination. So, remand is not required.

At step three, the ALJ must determine whether Claimant's impairments meet or exceed one of a list of specific impairments in the regulations.[5] These "listings" describe "impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). An individual who satisfies one of the listings—or, as Claimant raises in this case, its equivalent—is conclusively presumed to be disabled. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In evaluating medical equivalence, the Seventh Circuit has cautioned that "[w]hether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett v. Barnhart,* 381 F.3d 664, 670 (7th Cir. 2004) (citing 20 C.F.R. § 404.1526(b); S.S.R. 96–6P at 3).

Then, between steps three and four of the disability evaluation process, the ALJ must assess a Claimant's RFC, which is "his ability to do physical and mental work activities . . . despite limitations from his impairments." (R. 16) (citing 20 C.F.R § 404.1520(e); 20 C.F.R § 404.1545(a)(1)). In making an RFC assessment, the ALJ must incorporate all of a claimant's impairments—both those that are "severe" and "non severe." 20 C.F.R § 404.1520(e); 20 C.F.R § 404.1545(a)(1); *see also, Varga v.*

---

[5] In arguing that the ALJ erred in his listing and medical equivalency conclusions, Claimant incorrectly identifies step four as the listing level analysis. [ECF No. 15] at 3 ("At step four of the evaluation process, the ALJ must evaluate whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." The Court nevertheless evaluates Claimant's substantive listing argument (however brief) within the purview of step three.

8

*Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014). "Severe" is a term of art within the meaning of the Social Security Regulations: an impairment or combination of impairments is "severe" if it significantly limits a claimant's "physical or mental ability to do basic work activities and has lasted or is expected to last at least twelve continuous months (unless expected to result in death)." 20 C.F.R § 404.1522(a); (R. 17).

Here, the ALJ conducted a fulsome listing analysis, explored medical equivalency, and supported his conclusions by citing to testimony from Dr. Krishnamurthi, the ME in cardiology and internal medicine. He quoted Dr. Krishnamurthi as saying, "the [C]laimant's impairments, either individually or in combination, do not meet or equal a Listing in the Listing of Impairments, having considered Listings 3.02 and 4.04." (R. 18). Importantly, Claimant identifies no specific listing he believes he meets or medically equals, nor does he point to any evidence that the ALJ overlooked supporting listing level severity. *Gross v. Town of Cicero,* Ill., 619 F.3d 697, 703 (7th Cir. 2010) (courts do not consider a parties' factual assertions "that lack direct citation to easily identifiable support in the record"). Because his argument is largely undeveloped, it is waived. *Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

Following his step three analysis, the ALJ then formulated Claimant's RFC for the period before September 8, 2017. He specifically accounted for all of Claimant's limitations resulting from his "severe" impairments – "chronic obstructive pulmonary

9

disease (COPD), coronary artery disease status post coronary arthroplasty, obesity, mild degenerative disc disease, and a history of alcohol abuse in reported sustained remission" – as well as Claimant's "non severe" impairments, which included hyperlipidemia, hypertension, and depression and memory issues. (R. 17–18). Turning first to Claimant's obesity, (R. 18–19), the ALJ explicitly acknowledged that "[t]he combined effects of obesity with other impairments may be greater than might be expected without the disorder." (R. 25). He explained, however, that Claimant's "obesity does not meet or equal the criteria for any listed impairments, because there is no evidence that it significantly impairs his exertional function and non-exertional functions. Specifically, the [C]laimant does not have a major dysfunction of a joint, disorder of the spine, or any specific neurological deficits that affect his exertional and non-exertional functions. Additionally, there is no evidence that the claimant's obesity has caused significant impairments related to the claimant's other functions, such as cardiovascular, respiratory, or digestive, that causes reoccurring, persistent, and uncontrollable effects on these functions." (R. 19) (citing SSR 02-1p). The ALJ did not make the above conclusions in a vacuum, or as Claimant argues, fail to acknowledge Claimant's struggle with obesity. Claimant's Brief [ECF No. 15] at 4. Instead, he supported his reasoning by citing to Dr. Krishnamurthi's testimony that he "considered the effects of the [C]laimant's obesity on each of [Claimant's] impairments" when he opined that Claimant's impairments did not meet or medically equal a listing prior to September 8, 2017. (R. 18).

10

The ALJ also overtly acknowledged Claimant's mild degenerative disc disease, (R. 17), citing a lumbar spine x-ray from June 2016 that revealed this condition at L5-S1 (R. 24; R. 25) (citing Exhibit 6F, page 2). He concluded, however, that that this condition did not rise to listing level severity—specifically, listings 1.02 or 1.04—because there is "no evidence of a disorder of the spine resulting in a compromise of a nerve root with evidence of nerve root compression, spinal arachnoiditis, confirmed by an operative note or pathology report, or lumbar spinal stenosis resulting in pseudoclaudiation." (R. 19). In so concluding, he appropriately considered not only the objective medical evidence, but Dr. Krishnamurthi's opinion and other consultative examinations in the record as well.

Notwithstanding that he did not find Claimant's mild degenerative disc disease met or medically equaled a listing, the ALJ nevertheless accommodated the functional limitations related to that diagnosis in the RFC. To address Claimant's subjective complaints of "back pain" and the "radiology evidence of mild degenerative disc disease," the ALJ specifically limited Claimant to "standing and/or walking for only two hours in an 8-hour workday" (R. 25)—a conclusion fully supported by Dr. Krishnamurthi's expert testimony. (R. 18) (stating that this diagnosis was not disabling and that the Claimant could occasionally "bend, stoop, crouch, kneel, and crawl."). And while Claimant now argues that Claimant "experienced exertional limitations and required the use of a cane for balance and support," the objective medical evidence is not in accord. As the ALJ noted, "[w]hile [Claimant] has been

11

observed to use a cane, there is no evidence that this was prescribed or medically necessary." (R. 25).

Next, the ALJ expressly acknowledged Claimant's COPD and similarly explained this diagnosis was not disabling by citing Dr. Krishnamurthi's opinion that "the pulmonary report at Exhibit 2F . . . showed an FEV 1 of 1.98," and for someone of Claimant's height "this reading must be 1.50" to meet listing level severity. Dr. Krishnamurthi opined that Claimant's COPD symptoms could be accommodated by never "climb[ing] ladders, ropes, or scaffolds" and that Claimant "must avoid dust, fumes, pulmonary irritants, and extreme temperatures" – restrictions that the ALJ ultimately adopted in the RFC for the relevant period here. (R. 18, 20) ("He could never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs. He could occasionally balance, stoop, crouch, kneel, and crawl. He needed to avoid concentrated exposure to extreme cold and heat and concentrated exposure to respiratory irritants such as fumes, odors, dusts, and gases. He needed to avoid all exposure to unprotected heights.").

The ALJ correctly leaned on Dr. Krishnamurthi's opinion regarding Claimant's COPD given that Dr. Krishnamurthi is an expert in cardiology and internal medicine. (R. 18) (citing R. 46–48). Additionally, the ALJ supplemented Dr. Krishnamurthi's opinion with his own direct citations to the medical record to support his conclusion that Claimant's COPD was not disabling. (R. 23, 25) (citing R. 594–96) (Claimant's pulmonary function test from March 2016 showed "no significant change since previous [pulmonary function] testing in September 2014."); (R. 25) (citing R. 601–

12

05) (Claimant "had a normal respiratory examination" result at the April 25, 2016 Bureau of Disability Determination Services' Internal Medicine Consultative Examination.); (R. 24) (citing R. 878–99) (as of September 20, 2016, Claimant "was tolerating his current CPAP level well and his symptoms were improved."); (R. 24) (citing R. 867–77) (Dr. Khan's September 3, 2016 exam showed Claimant had "normal" respiratory exam results at that time.). In sum, the ALJ did not err in concluding, based on the objective medical evidence and medical opinions of record, that Claimant's COPD was relatively well-controlled by medication and conservative intervention, as further evidenced by Claimant's predominantly normal respiratory examinations. (R. 601–05, 640, 647, 696–98, 868, 882, 908).

Lastly, Claimant raises here on appeal physical limitations he says are secondary to his coronary artery disease, which the ALJ specifically addressed in the context of listing 4.04. (R. 19). After reviewing Claimant's normal cardiac examinations following his stent placement in 2015, the ALJ concluded that Claimant's "cardiac impairment does not fulfill the testing or treatment requirements of Listing 4.04"—a conclusion that Claimant does not now dispute. (R. 19, 25). Nor was the ALJ patently wrong in concluding as such, given his citation to relevant record evidence including, for example, notes from Claimant's treating physicians that Claimant's coronary artery disease diagnosis "has been stable" since Claimant's stent placement in 2015. (R. 19, 25) (citing R. 307–593, 601–05, 637–59).

A focal point of Claimant's argument that the ALJ erred in considering Claimant's "combination of impairments" at the listing level and in formulating the

13

RFC involving Claimant's mental limitations. Although Claimant charges that the ALJ did not give enough weight to Claimant's mental impairments and related cognitive symptoms, the ALJ, in fact, specifically acknowledged these issues and stated in part, "[t]he claimant has complained of depression as well as some memory issues." (R. 17). But he went on to explain that this diagnosis was not disabling within the meaning of the Social Security Regulations because "[C]laimant's mental status significantly improved after" Claimant's symptoms of alcohol withdrawal resolved while Claimant was in the hospital in the days immediately following the alleged disability onset date. (R. 23) (citing R. 307–593).

The ALJ further noted that Claimant's depression was well-controlled by his Zoloft prescription, as evidenced by the fact that, "at a second consultative evaluation [after the Zoloft prescription was increased following the alleged disability onset date], the [C]laimant displayed intact orientation and intact immediate, recent, and remote memory. He evidenced no impairment in working memory and an adequate fund of basic information. [. . .] The [C]laimant has been able to perform personal care, prepare food, do some shopping, drive, manage funds, live with others and [. . .] go out in order to shop and attend appointments with no evidence of difficulty being around others." (R. 18) (citing R. 216–26, 267–75, 597–600, 900–06). The ALJ also cited record evidence to support his assertion that Claimant himself described mostly physical rather than mental impairments. (R. 18) (citing R. 216–26, 267–75, 597–600). Therefore, the ALJ relied upon substantial evidence from the record to support his conclusion that Claimant's depression "imposes no more than mild, if any,

14

limitations in understanding, remembering, and applying information, mild limitations in interacting with others, mild limitations in concentration, persistence, and pace, and mild limitation in adaptation and managing oneself." (R. 17-18).

Claimant argues that neither his "obesity and degenerative disc disease" nor his mental health diagnosis were "given much weight" in the RFC determination and that the "combined effect" of Claimant's impairments "rendered the [C]laimant unable to work." Claimant's Brief [ECF No. 15] at 3–4. As explained above, however, the ALJ did consider, both individually and in combination, Claimant's obesity, degenerative disc disease, and mental health impairments. The ALJ properly relied on the ME's opinion that Claimant's impairments did not medically equal a listing individually or in combination, and it is dispositive that the record contains no medical opinion regarding Claimant's pre-September 2017 limitations more restrictive than the RFC—a fact "illuminating and persuasive on its face." *Castile v. Astrue*, 617 F.3d 923, 930 (7th Cir. 2010); *see also Rice,* 384 F.3d at 370 ("important[]" that "no doctor's opinion contained in the record . . . indicated greater limitations than those found by the ALJ"). It also is noteworthy that impairments do not inherently dictate any specific functional limitation on a claimant's work activities; rather, a claimant bears the burden to prove that impairments "impose . . . particular restrictions on [his] ability to work." *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018). Here, as the Commissioner aptly noted, Claimant "cite[d] no evidence that his alleged mental impairments resulted in any specific limitations." Commissioner's Resp. [ECF No. 26] at 11. Nor did Claimant cite any relevant

15

authority—whether record evidence or case law—in support of his general assertions that "[t]he combination of obesity with other medical impairments extends to the claimant's mental RFC," and "the combination of mental and physical symptoms on the [C]laimant's over all [sic] ability to function . . . was not given proper weight by the ALJ as required" Claimant's Reply [ECF No. 28] at 5, 6; *see Crespo,* 824 F.3d at 673 ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").

The Court is mindful of the deference owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by reweighing the evidence. Although this standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Only when an ALJ's decision "lacks evidentiary support . . . as to prevent meaningful review" must the case be remanded. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2020). In explaining his or her decision, the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but he must build a logical bridge from the evidence to his conclusion. *Minnick v. Colvin*, 775 F.3d 919, 935 (7th Cir. 2015). As such, an ALJ's analysis of a claimant's RFC "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). In the Court's view, the ALJ did enough here to justify his RFC conclusion for the period between December 7, 2015 and September 7, 2017.

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, the Court denies Claimant's request to reverse or remand [ECF No. 15] the ALJ's decision and affirms the Commissioner's request [ECF No. 26] to award Claimant DIB as of September 8, 2017, rather than as of December 7, 2015.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated:  May 5, 2022